# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Nos. 23-35322, 23-35323, 23-35324, 23-35354

WILD FISH CONSERVANCY,
*Plaintiff-Appellee/Cross-Appellant*,

v.

JENNIFER QUAN, Regional Administrator; CHRIS OLIVER, Assistant Administrator for Fisheries; NATIONAL MARINE FISHERIES SERVICE; GINA RAIMONDO, Secretary of Commerce; U.S. DEPARTMENT OF COMMERCE,
*Defendants-Appellants/Cross-Appellees*,

and

STATE OF ALASKA; ALASKA TROLLERS ASSOCIATION,
*Intervenor-Defendants-Appellants/Cross-Appellees*.

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

**ALASKA CONGRESSIONAL DELEGATION
AMICI CURIAE BRIEF IN SUPPORT OF INTERVENOR-DEFENDANTS-
APPELLANTS' MOTION FOR STAY PENDING APPEAL**

Charlene Koski
Van Ness Feldman, LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 623-9372
cbk@vnf.com

Tyson C. Kade
Van Ness Feldman, LLP
1050 Thomas Jefferson Street, NW
Washington, DC 20007
(202) 298-1948
tck@vnf.com

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF AMICI CURIAE ........................................................................1

INTRODUCTION ................................................................................................1

RELEVANT FACTUAL BACKGROUND..........................................................2

ARGUMENT ........................................................................................................4

      A.      Standard of Review ................................................................................4

      B.      The Likelihood of Success on the Merits Weighs in Favor of a Partial Stay..............................................................................................4

      C.      Vacating the ITS Will Cause Irreparable Harm to SEAK Troll Fishery Participants and Fishing Communities and Undermine Treaty Objectives.....................................................................................7

      D.      The Balance of Equities and Public Interest Weigh in Favor of a Partial Stay..............................................................................................8

CONCLUSION ...................................................................................................10

CERTIFICATE OF COMPLIANCE ..................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cal. Cmtys. Against Toxics v. EPA*,
 688 F.3d 989 (9th Cir. 2012) ...................................................................................5

*Ctr. for Biological Diversity v. Raimondo*,
 No. 18-cv-112-JEB, 2022 WL 17039193 (D.D.C. Nov. 17, 2022).....................8

*Ctr. for Food Safety v. Regan*,
 56 F.4th 648 (9th Cir. 2022) ...................................................................................5

*Drakes Bay Oyster Co. v. Jewell*,
 747 F.3d 1073 (9th Cir. 2014) ...............................................................................4

*E. Bay Sanctuary Covenant v. Biden*,
 993 F.3d 640 (9th Cir. 2021) .................................................................................4

*Lair v. Bullock*,
 697 F.3d 1200 (9th Cir. 2012) ...............................................................................4

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) .................................................................................4

*United States v. Washington*,
 459 F. Supp. 1020 (W.D. Wash. 1978) .................................................................8

*Weinberger v. Romero-Barcelo*,
 456 U.S. 305 (1982) ............................................................................................5, 9

## INTEREST OF AMICI CURIAE[1]

The Amici Curiae are Alaska's members of the U.S. Congress. The Amici share a bipartisan interest in ensuring that the nation meets its treaty obligations and protects and promotes the Pacific Ocean's shared environmental resources in a fair and responsible manner that does not needlessly disrupt long-established regional fisheries. Amici submit this brief to emphasize their interests in the faithful administration of the carefully balanced policy agreements in the Pacific Salmon Treaty ("Treaty") and to stress the immediate and irreparable harm the district court's decision will have on those public interests if not stayed pending appeal.

## INTRODUCTION

If not stayed, the immediate result of the district court's order will be to needlessly decimate the upcoming summer and winter seasons of the Southeast Alaska ("SEAK") Chinook salmon troll fishery, thereby frustrating the purpose and intent of the Treaty and causing economic devastation to Alaska's SEAK troll fishery participants and fishing communities. Intervenor-Defendants-Appellants and Defendants-Appellants are likely to succeed on the merits of their claims, and the other factors weigh heavily in favor of a stay.

---

[1] No party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person made a monetary contribution to the brief's preparation or submission.

# RELEVANT FACTUAL BACKGROUND[2]

The Treaty represents decades of international collaboration between the United States and Canada to manage the complexities of Pacific salmon fisheries sustainably, responsibly, and in a manner that mitigates the impacts of those Treaty-protected rights on endangered species. R. & R. at 8, No. 2:20-cv-00417-RAJ (W.D. Wash. Dec. 13, 2022), ECF 144, App. 31 ("R&R") (describing U.S. interests and objectives); Decl. of Frederick Turner at 610, No. 2:20-cv-00417-RAJ (W.D. Wash. May 11, 2020), ECF 43-1, App. 11 (treaty principles).[3] At the request of the U.S. Pacific Salmon Commissioners,[4] Second Decl. of Scott Rumsey at 4, No. 2:20-cv-00417-RAJ (W.D. Wash. Oct. 3, 2022), ECF 133-4, App. 28, Congress has allocated tens of millions of dollars to meet the United States' obligations under the Treaty,

---

[2] The Alaska Congressional Delegation agrees with the background contained in the motion of Intervenor-Defendant-Appellant State of Alaska (No. 23-35322, ECF 15), which Intervenor-Defendant-Appellant Alaska Trollers Association has joined (No. 23-35323, ECF 19), and the statement of the case in the response by Federal Defendants-Appellants (No. 23-35354, ECF 7), and repeats them here only as necessary to support arguments in this brief.

[3] "App." refers to pages in the Appendix attached hereto.

[4] The Pacific Salmon Commission is the body formed by the governments of Canada and the United States to implement the Treaty. The Pacific Salmon Commission is a 16-person body with four commissioners and four alternates from each country representing the interests of commercial and recreational fisheries as well as federal, state, and tribal governments. Decl. of Scott Rumsey at 3, No. 2:20-cv-00417-RAJ (W.D. Wash. May 11, 2020), ECF 43-4, App. 13.

including providing more than $18 million annually to implement mitigation and conservation programs. *Id*. at 4-5, App. 28-29.

In part, the district court's order affirming the Magistrate Judge's R&R vacates the 2019 Biological Opinion's ("BiOp") incidental take statement ("ITS") for the SEAK salmon troll fishery. The ITS is vital to the success of the Treaty's negotiated approach to management. It allows the SEAK fishery, whose annual permit holders are mostly small family-owned businesses in Southeast Alaska, Decl. of Paul Olson at 4-5, No. 2:20-cv-00417-RAJ (W.D. Wash. May 11, 2020), ECF 39, App. 2-3, to continue operating under the Treaty's Chinook salmon harvest limits while incidentally taking a small number of protected species. Without the ITS, the troll fishery cannot operate for 10 months of the year. Alaska Trollers Resp. at 11, No. 2:20-cv-00417-RAJ (W.D. Wash. Oct. 3, 2022), ECF 128, App. 19; Decl. of Paul Olson ¶ 44, No. 2:20-cv-00417-RAJ (W.D. Wash. Oct. 3, 2022), ECF 131, App. 21. The economic and social impact of this closure will be severe in many of our remote communities, where a significant fraction of our residents rely on trolling as a primary source of income. *E.g.*, Phillips Decl. ¶¶ 4-7, No. 2:20-cv-00417-RAJ (W.D. Wash. Oct. 3, 2022), ECF 132, App. 23-24.

# ARGUMENT

## A. Standard of Review

When deciding a motion to stay, this Court considers

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). When the government is a party, the third and fourth factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1091 (9th Cir. 2014) (citation omitted). Because stays are directed at the judicial proceeding and not an individual actor, they "are typically less coercive and less disruptive than are injunctions." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (citation omitted); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 656 (9th Cir. 2021).

## B. The Likelihood of Success on the Merits Weighs in Favor of a Partial Stay.

When it adopted the R&R vacating the ITS for the SEAK Chinook salmon troll fishery, the district court relied on a misapplication of the vacatur standards and failed to consider the Treaty's role in managing the complex interplay of competing interests and fishery management challenges at issue.

When determining whether to vacate an invalid agency action, a court must weigh "the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed.'" *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 663 (9th Cir. 2022) (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (remanding without vacatur due to unnecessary waste of already invested public resources and harm to agricultural industry))).

The "seriousness" of an agency's error is determined by considering "'whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand.'" *Ctr. for Food Safety*, 56 F.4th at 663-64 (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)). Generally, when deciding whether to vacate agency action, "courts of equity should pay particular regard for the public consequences." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted); *see also California Communities Against Toxics*, 688 F.3d at 994 (vacatur unwarranted due to public need for completion of power plant, "economically disastrous" impact of stopping

construction on plant, and fact that harms of proceeding were insignificant with mitigation).

The 2019 BiOp's prey increase program, which the district court appropriately left in place, is a salmon hatchery production program that aims to provide a four-to-five percent increase in prey available for the Southern Resident Killer Whale ("SRKW"), and which the R&R recognized is working. R&R at 31, App. 38.[5] That increase helps accomplish the Treaty's objectives by offsetting any minimal detrimental impact Alaska fisheries might otherwise have on the number of fish available for the SRKW. Congress funds the prey increase program every year with an understanding that it will both increase prey abundance and enable certain Alaska fisheries to continue operating. *Id.* at 12, App. 32.

The evidence before the district court was that, given this successful mitigation already in place, the "prey reductions from the SEAK troll fisheries, particularly in the most important locations and seasons for the whales, are small and . . . will not jeopardize their survival or recovery." Third Decl. of Lynne Barre ¶ 5, No. 2:20-cv-00417-RAJ (W.D. Wash. Oct. 3, 2022), ECF 133-2, App. 26.

---

[5] Wild Fish Conservancy seeks to stay implementation of the prey increase program pending appeal, but disrupting the program now, after careful and deliberate balancing of conservation and allocation interests through the extensive Treaty process, would reverse much of the recognized progress and endanger the wildlife Congress intended to conserve through the Treaty's mitigation and conservation programs. As the R&R concluded, vacating the program would put the SRKW at increased risk. R&R at 34, App. 39.

Because the ITS would cause only negligible harm, there was no need to vacate it, irrespective of any alleged flaws. Doing so was inconsistent with the applicable legal standards described above and undermines the Treaty's objectives.

    **C.    Vacating the ITS Will Cause Irreparable Harm to SEAK Troll Fishery Participants and Fishing Communities and Undermine Treaty Objectives.**

The economic and cultural devastation the SEAK fishery participants and fishing communities will experience if the ITS is vacated is well-documented in the motion of the State of Alaska and in the record. Vacatur would result in an estimated $29 million annual loss in an industry that employs hundreds of people and would detrimentally impact an entire way of life that has existed for generations. R&R at 30, App. 37; Defs.' Objs. to R. & R. at 8, No. 2:20-cv-00417-RAJ (W.D. Wash. Jan. 10, 2023), ECF 149, App. 47; Alaska Objs. to R. & R. at 9, No. 2:20-cv-00417-RAJ (W.D. Wash. Jan. 10, 2023), ECF 148, App. 45; Alaska Trollers Ass'n Objs. to R. & R. at 3, 11-12, No. 2:20-cv-00417-RAJ (W.D. Wash. Jan. 10, 2023), ECF 147, App. 41-43.[6] This harm easily outweighs the ITS's negligible impact, which has *already been mitigated*. Furthermore, because fisheries along the coasts of Oregon,

---

[6] The Alaska Legislature recently found that, when accounting for multiplier effects of the fishing, seafood processing, and fisheries-related industries, commercial trolling in SEAK has a total annual economic impact of approximately $85 million in total output. H.R.J. Res. 5, 33rd Leg., 1st Sess. (Alaska 2023), App. 48-50.

7

Washington, and Canada will continue harvesting salmon that provide prey for SRKWs, vacatur of the ITS provides no meaningful biological benefit.

As described above, the prey increase program, which Congress has funded and which the R&R concluded is working, helps accomplish the Treaty's objectives by mitigating against the already reduced fishing privileges of the SEAK Chinook salmon troll fishery. *See*, *e.g.*, Rumsey Decl. at 13, App. 17 (Fiscal Year 2020 Spend Plan for treaty implementation). Yet, when considering the potential environmental harms that might arise from leaving the ITS in place, the R&R failed to balance or even mention the mitigating benefits of the prey increase program. *See* R&R at 26-30, App. 33-37. Vacating the ITS does nothing to prevent harm and, instead, needlessly imposes it on SEAK's troll fishery participants and fishing communities. *See*, *e.g.*, *Ctr. for Biological Diversity v. Raimondo*, No. 18-cv-112-JEB, 2022 WL 17039193, at *2 (D.D.C. Nov. 17, 2022) (holding vacatur of BiOp for federal lobster fishery in abeyance when "there are at least open questions concerning the species benefits that would accompany these great costs to the lobstermen.").

### D. The Balance of Equities and Public Interest Weigh in Favor of a Partial Stay.

For reasons already stated, a partial stay would allow the SEAK salmon fishing season to proceed without injury to Wild Fish Conservancy, as any harm from the ITS is already mitigated. The public's interest in Congress meeting the Treaty's objectives also weighs in favor of a stay. *See, e.g.*, *United States v.*

8

*Washington*, 459 F. Supp. 1020, 1106 (W.D. Wash. 1978) (recognizing public interest served by permitting the United States to honor its treaty obligations); *see also Weinberger v. Romero-Barcelo*, 456 U.S. at 312 (when granting injunctive relief, "courts of equity should pay particular regard for the public consequences."). Indeed, since the district court issued its decision, more than 30 Alaska and Washington communities, Tribes, conservation organizations, and governments have passed resolutions or issued other statements opposing closure of the SEAK troll fishery. These documents respond directly to the magistrate's R&R and the district court's order and demonstrate the significant public interest at stake.[7]

The Treaty works to balance the interests of fisheries, protected species, and the rights and obligations of impacted states, countries, and Tribes. *See* Turner Decl. at 200-01, App. 7-8. When setting SEAK Chinook salmon harvest limits, it aims to "find an acceptable and effective distribution of harvest opportunities and fishery constraints that, when combined with domestic fishery management constraints, would be consistent with the fundamental conservation and sharing objectives of the Treaty." *Id*. at 200, App. 7. The ITS program is part of that comprehensive management scheme intended to achieve the Treaty's objectives. Vacating the ITS undermines those objectives and the public interests they protect.

---

[7] For this Court's convenience, these statements and resolutions are attached in the appendix to this brief. *See* App. 51-100.

9

# CONCLUSION

Based on the foregoing and arguments in the motion of Intervenor-Defendants-Appellants, this Court should stay the district court's order vacating the ITS for the SEAK salmon troll fishery. Vacating the ITS would cause irreparable harm to SEAK troll fishery participants and fishing communities, frustrate the Treaty's objectives, and run counter to the public interest.

Respectfully submitted,

/s/ *Tyson C. Kade*
Tyson C. Kade
VAN NESS FELDMAN, LLP
1050 Thomas Jefferson Street, NW
Washington, DC 20007
Phone: (202) 298-1800
Fax: (202) 338-2416
Email: tck@vnf.com

Charlene Koski
VAN NESS FELDMAN, LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101
Phone: (206) 623-9372
Email: cbk@vnf.com

*Counsel for Amici Curiae*

Dated: June 2, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a), 32(a), and 32(g), and Circuit Rule 32-1, I hereby certify that the foregoing Alaska Congressional Delegation Amici Curiae Brief in Support of Intervenor-Defendants-Appellants' Motion for Stay Pending Appeal has been prepared in a proportionally spaces typeface (using Microsoft Word 365, in 14-point Times New Roman font), contains 2,178 words total, excluding items exempted by Federal Rule of Appellate Procedure 32(f).

    Respectfully submitted,

    /s/ *Tyson C. Kade*
    Tyson C. Kade
    VAN NESS FELDMAN, LLP
    1050 Thomas Jefferson Street, NW
    Washington, DC 20007
    Phone: (202) 298-1800
    Fax: (202) 338-2416
    Email: tck@vnf.com

Dated: June 2, 2023