# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

WILD FISH CONSERVANCY,

*Plaintiff-Appellee/Cross-Appellant*,

vs.

JENNIFER QUAN, in her official capacity as the Regional Administrator for the National Marine Fisheries Service, *et al.*,

*Defendants-Appellants/Cross-Appellees*,

and

STATE OF ALASKA and ALASKA TROLLERS ASSOCIATION,

*Intervenor-Defendants-Appellants/Cross-Appellees.*

---

On Appeal from the United States District Court for the Western District of Washington Case No. 2:20-cv-00417-RAJ-MLP (Hon. Richard A. Jones)

---

## SECOND FURTHER EXCERPTS OF RECORD
## (SFER-1–21)

---

Brian A. Knutsen
Emma A. O. Bruden
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel: (503) 841-6515
brian@kampmeierknutsen.com
emma@kampmeierknutsen.com

Eric A. Lindberg
Corr Cronin, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
Tel: (206) 625-8600
elindberg@corrcronin.com

*Attorneys for Plaintiff-Appellee/Cross-Appellant Wild Fish Conservancy*

Index for Second Further Excerpts of Record
*Wild Fish Conservancy v. Quan, et al.*
Appeal Nos. 23-35322, 23-35323, 23-35324, 23-35354

| SFER-1–21 | | |
|---|---|---|
| **Document Name** | **ECF No.** | **SFER** |
| Plaintiff's Response to Defendants' and Defendant-Intervenors' Objections to Magistrate Judge's Report and Recommendation | 156 | 3 |

HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | WILD FISH CONSERVANCY,

11 |         Plaintiff,

12 | v.

13 | SCOTT RUMSEY, in his official capacity as the
    | Acting Regional Administrator for the National
14 | Marine Fisheries Service, *et al.*,

15

16 |         Defendants,

17 | and

18 | ALASKA TROLLERS ASSOCIATION, and
    | STATE OF ALASKA,
19

20 |         Defendant-Intervenors.

Case No. 2:20-cv-00417-RAJ-MLP

PLAINTIFF'S RESPONSE TO
DEFENDANTS' AND DEFENDANT-
INTERVENORS' OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION

21
22
23
24
25
26
27
28

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 1
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-3**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................3

GLOSSARY OF ACRONYMS.........................................................................6

I.  INTRODUCTION .................................................................................7

II.  STATEMENT OF FACTS. ...................................................................7

    A.  Endangered SRKWs and Threatened Chinook salmon. ...........................7

    B.  Southeast Alaska Salmon Fisheries and NMFS's 2019
        SEAK BiOp. ....................................................................................8

III.  PRIOR PROCEEDINGS. .....................................................................9

IV.  ARGUMENT. ......................................................................................10

    A.  The Court Should Adopt the R&R's Proposed Partial
        Vacatur of the ITS.............................................................................10

        1.  It is presumed that unlawful agency actions
            are to be vacated entirety. ...........................................................10

        2.  The R&R's proposed vacatur is narrowly
            focused and pragmatic. ...............................................................11

        3.  Defendants cannot overcome the strong
            presumption for vacatur. .............................................................13

            a.  NMFS's ESA and NEPA violations
                are exceedingly serious. ......................................................13

            b.  Defendants have failed to show that
                disruptive consequences of vacating
                the prey increase program outweigh
                NMFS's errors. ...................................................................16

    B.  The Court Should Adopt the R&R's Decision to
        Strike Materials................................................................................17

V.  CONCLUSION....................................................................................18

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 2
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Allen v. Sybase, Inc.*,
    468 F.3d 642 (10th Cir. 2006) ...............................................................17

*All. for the Wild Rockies v. U.S. Forest Serv.*,
    907 F.3d 1105 (9th Cir. 2018) ...............................................................10

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ...............................................................17

*Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*,
    688 F.3d 989 (9th Cir. 2012) ......................................................10, 11, 17

*Ctr. for Biological Diversity v. Bernhardt*,
    982 F.3d 723 (9th Cir. 2020) ...............................................................15

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*,
    843 F. App'x 77 (9th Cir. 2021) ....................................................7, 10, 11

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*,
    466 F. Supp. 3d 1217 (W.D. Wash. 2020),
    *aff'd* 843 F. App'x 77 (9th Cir. 2021)..........................................7, 10, 11, 17

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
    508 U.S. 602 (1993)...............................................................17

*Cook v. Sheriff of Monroe Cnty.*,
    402 F.3d 1092 (11th Cir. 2005) ...............................................................18

*Cutting v. Yoke Indus. Corp.*,
    No. C20-5346 BHS-JRC,
    2022 U.S. Dist. LEXIS 201441 (W.D. Wash. Nov. 4, 2022) ...........................17

*Hopkins v. Dow Corning Corp.*,
    33 F.3d 1116 (9th Cir. 1994) ...............................................................18

*Humane Soc'y of the U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) ...............................................................11

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ...............................................................17

*In re Clean Water Act Rulemaking*,
    568 F. Supp. 3d 1013 (N.D. Cal. 2021) ...............................................................17

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 3
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-5**

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*,
    109 F. Supp. 3d 1238 (N.D. Cal. 2015) ............................................11, 15, 17

*Little Butte Prop. Owners Water Ass'n v. Bradley*,
    No. 2:17-CV-162-RMP,
    2018 U.S. Dist. LEXIS 70501 (E.D. Wash. Apr. 26, 2018) ............................18

*Maldonado v. Apple, Inc.*,
    No. 3:16-cv-04067-WHO,
    2021 U.S. Dist. LEXIS 92483 (N.D. Cal. May 14, 2021) ...............................18

*Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*,
    960 F.3d 1120 (9th Cir. 2020) .......................................................................17

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
    460 F. Supp. 3d 1030 (D. Mont. 2020)....................................................16, 17

*Pollinator Stewardship Council v. U.S. Env't Prot. Agency*,
    806 F.3d 520 (9th Cir. 2015) .........................................................................11

*Puget Soundkeeper All. v. Wheeler*,
    No. C15-1342-JCC,
    2018 U.S. Dist. LEXIS 199358 (W.D. Wash. Nov. 26, 2018) ...................11, 16

*Se. Alaska Conservation Council v. U.S. Forest Serv.*,
    468 F. Supp. 3d 1148 (D. Alaska 2020) ........................................................17

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978).......................................................................................17

*United States v. Phillipos*,
    849 F.3d 464 (1st Cir. 2017)...........................................................................18

*W. Watersheds Project v. Zinke*,
    441 F. Supp. 3d 1042 (D. Idaho 2020) .....................................................14, 17

*Wild Fish Conservancy v. Nat'l Park Serv.*,
    No. C12-5109-BHS,
    2014 U.S. Dist. LEXIS 105689 (W.D. Wash. July 31, 2014) .....................11, 14

**Statutes**

16 U.S.C. § 1536........................................................................................................14

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 4
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-6**

**Regulations**

50 C.F.R. § 223.102 .......................................................................................................8

**Other Authorities**

70 Fed. Reg. 69,903 (Nov. 18, 2005)...........................................................................7

Fed. R. Civ. P. 72 .......................................................................................................17

Fed. R. Evid. 702 .......................................................................................................18

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 5
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-7**

**GLOSSARY OF ACRONYMS**

| | |
|---|---|
| AR | Administrative Record |
| BiOp | Biological Opinion |
| ESA | Endangered Species Act |
| ESU | Evolutionarily Significant Unit |
| ITS | Incidental Take Statement |
| NEPA | National Environmental Policy Act |
| NMFS | National Marine Fisheries Service |
| PVA | Population Viability Analysis |
| R&R | [Magistrate Judge's] Report and Recommendation |
| SEAK | Southeast Alaska |
| SRKW | Southern Resident Killer Whales |

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 6
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

SFER-8

1  **I.      INTRODUCTION.**

2          The National Marine Fisheries Service's ("NMFS") review of Southeast Alaska salmon

3  harvests was riddled with substantial violations of the Endangered Species Act ("ESA") and the

4  National Environmental Policy Act ("NEPA"). The presumptive remedy is vacatur of the entire

5  2019 biological opinion, including the incidental take statement ("ITS"), for the fisheries ("2019

6  SEAK BiOp"). *See Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 843 F.

7  App'x 77, 80 (9th Cir. 2021). The Magistrate Judge's Report and Recommendation ("R&R"),

8  however, recommends that the Court adopt the Conservancy's proposal for a narrow partial

9  vacatur of the ITS. Such relief would reduce harm to endangered Southern Resident killer whales

10  ("SRKWs") and threatened Chinook salmon while NMFS evaluates the fisheries under the ESA

11  and NEPA, but still allow most salmon fisheries covered by the unlawful ITS to continue.

12          Defendants fail to overcome the strong presumption for vacatur of the entire 2019 SEAK

13  BiOp and refuse to provide "meaningful assistance . . . in helping to shape a compromise

14  remedy," untenably insisting "that they should be allowed . . . [to continue their activities] under

15  a defective, unlawful [BiOp] regardless of the environmental impacts for an unspecified period

16  of time." *See Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F. Supp.

17  3d 1217, 1226 (W.D. Wash. 2020). The Court should adopt the R&R's proposed vacatur. *See id.*

18  **II.     STATEMENT OF FACTS.**

19          **A.     Endangered SRKWs and Threatened Chinook salmon.**

20          The SRKW "has declined to historically low levels" and is considered by NMFS one of

21  the most at-risk species. AR 47276, 15988–89; *see* 70 Fed. Reg. 69,903 (Nov. 18, 2005).

22  Insufficient prey—namely, Chinook salmon—is the primary cause of the decline, contributing to

23  premature mortality and reduced fertility. Dkt. 14-3 ¶¶ 6.b, 33.b–c; Dkt. 111 at 8. Dr. Deborah

24  Giles is a conservation biologist studying SRKWs and explains that current conditions are

25  "unprecedented," with more than a fifth of the population likely vulnerable and emaciated. Dkt.

26  127-1 ¶¶ 11, 14; Dkt. 14-2 ¶¶ 2–5. "[A]n immediate increase in the abundance of Chinook

27  [salmon] . . . [is needed] to avoid functional extinction." Dkt. 127-1 ¶ 18.

28  PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 7
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-9**

Dr. Robert Lacy is a conservation scientist that developed the Vortex population viability analysis ("PVA") relied upon by NMFS's 2019 SEAK BiOp and Canada to assess the status of SRKWs. Dkt. 14-3 ¶¶ 2, 8–13; *see also* AR 47278, 47282, 47502–03. Dr. Lacy "is among the world's most experienced, respected, and sought-after modelers for conducting [PVA] . . . ." Dkt. 91-5 ¶ 23. Dr. Lacy confirms that prey abundance is the primary factor affecting the status of the SRKW and that a 5% increase in prey is needed to merely stop the SRKW's decline, with larger increases needed for recovery. Dkt. 14-3 ¶ 6.b; Dkt. 91-4 ¶¶ 17–22; Dkt. 127-2 ¶¶ 5–7.

The Puget Sound, Lower Columbia River, Upper Willamette River, and Snake River fall-run Chinook salmon evolutionarily significant units ("ESU") are threatened species under the ESA. 50 C.F.R. § 223.102(e). Primary causes of their decline include harvests and hatcheries. AR 01729, 14492, 15761, 15891. Many populations within these ESUs are at a high extinction risk and below escapement goals set for recovery purposes; i.e., not enough adult fish are returning to spawn. *See, e.g.*, AR 01741–42, 01747, 15904–05, 15911.

### B.   Southeast Alaska Salmon Fisheries and NMFS's 2019 SEAK BiOp.

Salmon are harvested in Southeast Alaska in commercial, recreational, and subsistence fisheries. *See* Dkt. 127-4 ¶¶ 15–17; AR 14913, 47471, 47475. Species harvested are Chinook, sockeye, coho, pink, and chum salmon. *See* Dkt. 127-4 ¶¶ 15–17; AR 14913. The fisheries use hand and power troll gear, purse seines, and drift and set gillnets. Dkt. 127-4 ¶ 17. Troll fisheries harvest mostly coho and Chinook salmon; the purse seine and drift gillnet fisheries harvest mostly pink and chum salmon; and the gillnet fishery harvests mostly sockeye and coho salmon. *See* Dkt. 127-4 ¶ 16 tbl. 2. While most Chinook salmon are taken in the troll fisheries, some are harvested in purse seine, drift net, and gillnet fisheries. *See* Dkt. 127-4 ¶ 16 tbl. 2; AR 14910.

NMFS consulted under section 7 of the ESA on the effects of the 10-year fishing regimes set by the 2019 Pacific Salmon Treaty, which culminated in NMFS's issuance of the 2019 SEAK BiOp. *See* AR 47195, 47197. NMFS determined that the Southeast Alaska salmon fisheries cause "take" of ESA-listed species. *See* AR 47518–24. The fisheries' harvest threatened Puget Sound, Lower Columbia River, Upper Willamette River, and Snake River fall-run Chinook

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 8
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

SFER-10

1    salmon. *See, e.g.*, AR 47373–419, 47518–19. The fisheries cause take of endangered SRKWs by

2    reducing prey availability. AR 47433–49, 47519. Finally, the fisheries also cause take of

3    threatened Mexico humpback whales and endangered Western Steller sea lions through

4    entanglements with nets and other gear and from hooking injuries. AR 47449–81, 47519–24.

5         While the 2019 Pacific Salmon Treaty reduced harvests levels from the prior agreement,

6    it was determined that more was needed to protect SRKWs and Puget Sound Chinook salmon.

7    *See* AR 47201–02. NMFS could have imposed more stringent harvest limits to protect these

8    species under the ESA. *See, e.g.*, AR 47212, 47368, 47436. Instead, NMFS announced a federal

9    "funding initiative" that seeks to offset harvest impacts. AR 47201–03. The initiative includes

10   three elements, including the "prey increase program" through which NMFS seeks to fund

11   increased Chinook salmon hatchery production in Puget Sound and the Columbia River and on

12   the Washington Coast in an effort to increase SRKW prey. AR 47202–03. The other two

13   components focus on recovering Chinook salmon populations in four specific Puget Sound rivers

14   by funding habitat restoration projections and conservation hatchery programs. AR 47202.

15        NMFS's 2019 SEAK BiOp concluded that the fisheries, with the mitigation, are not

16   likely to jeopardize ESA-listed species. AR 47484–517. The 2019 SEAK BiOp therefore

17   includes an ITS authorizing Southeast Alaska salmon fisheries to "take" ESA-listed Chinook

18   salmon, SRKWs, Mexico humpback whales, and Western Steller sea lions. AR 47517–27.

19   **III.    PRIOR PROCEEDINGS.**

20        The Magistrate Judge's Report and Recommendation on liability, adopted by the Court,

21   found that the 2019 SEAK BiOp is inconsistent with the ESA for two reasons. First, it violates

22   the ESA by relying on mitigation that lacks sufficient detail as to how it will be implemented to

23   mitigate harm, is not subject to deadlines, and is not subject to NMFS's control or otherwise

24   reasonably certain to occur. *See* Dkt. 111 at 27–31. Second, the 2019 SEAK BiOp violates the

25   ESA by assuming benefits to SRKWs from the prey increase program without determining

26   whether the program will jeopardize Chinook salmon. *Id.* at 31–33. The Court found that NMFS

27   violated its duty under section 7 of the ESA to ensure that its actions do not jeopardize species by

28   PLAINTIFF'S RESPONSE TO OBJECTIONS
     TO MAGISTRATE JUDGE'S REPORT – 9
     Case No. 2:20-cv-00417-RAJ-MLP

     KAMPMEIER & KNUTSEN PLLC
     1300 S.E. Stark Street, Suite 202
     Portland, Oregon 97214
     (503) 841-6515

     CORR CRONIN, LLP
     1001 Fourth Avenue, Suite 3900
     Seattle, Washington 98154
     (206) 625-8600

     **SFER-11**

1  relying on the deficient 2019 SEAK BiOp. *Id.* at 33–34. Finally, the Court held that NMFS
2  violated NEPA by issuing the ITS for the fisheries and by adopting the prey increase program
3  without providing any of the required NEPA processes for those two actions. *Id.* at 36–38.

4         To remedy these violations, the R&R recommended that the Court remand the 2019
5  SEAK BiOp to NMFS to correct its ESA and NEPA errors identified above. Dkt. 144 at 39–40.
6  The R&R further recommended that the Court narrowly vacate the 2019 SEAK BiOp's ITS as
7  proposed by the Conservancy—to the extent that the ITS authorizes take of SRKWs and
8  Chinook salmon resulting from commercial harvests of Chinook salmon during the winter and
9  summer seasons (excluding the spring season) of the troll fisheries. *Id.* at 40. The R&R
10 recommended that the Court refrain from imposing interim relief against the prey increase
11 program while NMFS attempts to remedy its ESA and NEPA violations. *Id.*

12        Defendants objected to the recommended partial vacatur of the ITS. *See generally* Dkts.
13 147–149. The Conservancy objected to the recommendation to allow the unlawful prey increase
14 program to continue while NMFS seeks to remedy its violations. *See generally* Dkt. 151.

15 **IV.   ARGUMENT.**

16        A.    <u>**The Court Should Adopt the R&R's Proposed Partial Vacatur of the ITS.**</u>

17        There is a strong presumption that the unlawful 2019 SEAK BiOp, including the entire
18 ITS, should be vacated. The R&R, however, recommends that the Court narrowly vacate only
19 those portions of the ITS that are most harmful to imperiled species, while allowing most salmon
20 harvests covered by the ITS to continue. The Court should adopt this pragmatic proposal; this is
21 not a rare case where remand without vacatur of NMFS's unlawful decision is appropriate.

22              1.    <u>**It is presumed that unlawful agency actions are to be vacated entirely.**</u>

23        The "presumptive remedy" is "full vacatur" of the 2019 SEAK BiOp. *See Coal. to*
24 *Protect Puget Sound*, 843 F. App'x at 80. It is Defendants' burden to overcome the presumption.
25 *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018); *Coal.*
26 *to Protect Puget Sound*, 466 F. Supp. 3d at 1219, 1226. In considering their request, the Court
27 weighs the seriousness of the errors against the disruptive consequences posed by vacatur. *Cal.*

28
KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515          CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-12**

*Cmtys. Against Toxics v. U.S. Env't Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012).

However, there is a strong presumption that unlawful agency decisions should be vacated, and remand without vacatur is therefore rarely appropriate. *See Pollinator Stewardship Council v. U.S. Env't Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015) ("only in limited circumstances"); *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("[i]n rare circumstances"). "The cases in which remand without vacatur was deemed appropriate 'highlight the **significant disparity** between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other.'" *Puget Soundkeeper All. v. Wheeler*, No. C15-1342-JCC, 2018 U.S. Dist. LEXIS 199358, at *16–17 (W.D. Wash. Nov. 26, 2018) (citation omitted, emphasis added); *see also Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015). Moreover, courts tip the scale in favor of protecting imperiled species when considering vacatur because Congress intended such species to be prioritized over other objectives when it enacted the ESA. *E.g.*, *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242.

### 2.   The R&R's proposed vacatur is narrowly focused and pragmatic.

The presumed remedy for NMFS's violations is vacatur of the entire 2019 SEAK BiOp. *See Coal. to Protect Puget Sound*, 843 F. App'x at 80. However, the Conservancy requested and the R&R proposed a partial vacatur of the ITS focused only on the fisheries that are most harmful to ESA-listed species, while leaving in place authorization for most salmon fisheries covered by the unlawful ITS. Courts look favorably on such efforts. *See Coal. to Protect Puget Sound*, 466 F. Supp. 3d at 1225–27 (adopting plaintiff's "suggested compromise" to complete vacatur), *aff'd*, 843 F. App'x at 80 ("Full vacatur is the ordinary remedy . . . . Here, the court . . . carefully crafted a hybrid remedy that reasonably balanced the competing risks of environmental and economic harms."); *Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-5109-BHS, 2014 U.S. Dist. LEXIS 105689, at *9–10 (W.D. Wash. July 31, 2014).

The R&R recommends vacatur of the ITS to the extent that it authorizes take resulting from commercial harvests of Chinook salmon during the winter and summer seasons (excluding

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

1  the spring season) of the troll fisheries. Dkt. 144 at 40. Those harvests are the most harmful to

2  SRKWs and threatened Chinook salmon of the fisheries covered by the ITS. Specifically, the

3  winter troll season targets 45,000 Chinook salmon and the summer troll season targets the

4  remaining "Treaty" Chinook salmon available under the Pacific Salmon Treaty. AR 47318.

5  These fisheries reduce prey available to SRKWs and harvest fish from the four threatened

6  Chinook salmon ESUs. *See, e.g.*, AR 47319, 47366–47419, 47433–49.

7        Dr. Lacy's recent modeling indicates that halting these harvests would increase prey

8  available to SRKWs by around 4.8%, which "would provide just enough benefit to [SRKWs] to

9  allow the population to stabilize." Dkt. 127-2 ¶¶ 8–9. While Defendants levy critiques of Dr.

10  Lacy's analysis—without demonstrating any expertise in PVA modelling—the R&R correctly

11  pointed out that it is undisputed that the recommended vacatur would benefit ESA-listed species.

12  *See* Dkt. 144 at 33–34. Notably, Alaska's new data show that over half of the Chinook salmon

13  harvested in Southeast Alaska are from stocks considered high priority prey for SRKWs, while

14  only seventeen percent are from stocks that are not used as prey by SRKWs. *See* Dkt. 135-1 at 6.

15        While the recommended vacatur would impose economic consequences, the impacts are

16  substantially mitigated by the proposal for partial vacatur of the ITS. The 2019 SEAK BiOp's

17  ITS authorizes "take" of ESA-listed species (i.e., SRKWs, Chinook salmon, Mexico humpback

18  whales, and Western Steller sea lions) resulting from salmon harvests throughout Southeast

19  Alaska—the ITS covers all gear types (i.e., troll, set and drift gillnet, and purse seine fisheries); it

20  applies to commercial, sport/recreational, and subsistence fisheries; and it applies irrespective of

21  the salmon species targeted by the fisheries (i.e., Chinook, chum, coho, pink, and sockeye

22  salmon). *See* AR 47457–79, 47518 (ITS covers "expected take in the SEAK salmon fishery").

23  The R&R's proposed remedy—focused on commercial harvests of Chinook salmon in two

24  seasons of the troll fishery—affects a small portion of the fisheries covered by the ITS.

25        The total harvest value for all commercial salmon fisheries in Southeast Alaska in 2020

26  was $55.2 million. Dkt. 127-4 ¶¶ 15–16 tbl. 3. Of the species harvested, chum salmon provided

27  the most value, representing 36 percent of the total Southeast Alaska salmon harvest value. *Id.*

28

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 12
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

SFER-14

1   "The troll fishery accounted for 38 percent of all [commercial] SEAK salmon (all species)

2   harvest value in 2020 at $21.2 million." *Id.* ¶¶ 16 tbl. 3, 21.a. For the troll fishery, Chinook

3   salmon accounted for 54 percent of the harvest value ($11.5 million), coho salmon was 44

4   percent ($9.3 million), and sockeye, pink, and chum salmon accounted for two percent ($0.4

5   million). *Id.* ¶¶ 16 tbl. 3, 21.b. Thus, the harvest value of Chinook salmon caught in the toll

6   fishery ($11.5 million) was around 21 percent of the total harvest value ($55.2 million) for all

7   Southeast Alaska commercial salmon fisheries. *See id.* at ¶¶ 15–16 tbl. 3. **Seventy-nine percent**

8   of the commercial salmon harvest value covered by the ITS is unaffected by the proposed

9   vacatur; i.e., all commercial net/seine fisheries and all non-Chinook salmon commercial troll

10  fisheries. Further, the vacatur would not even affect all commercial harvests of Chinook salmon

11  in the troll fisheries; it would allow harvests in the spring season. *See* Dkt. 144 at 39–40. Finally,

12  beyond the commercial fisheries reflected in the figures discussed above, there are significant

13  sport and subsistence salmon fisheries that would not be impacted by the proposed vacatur. *See*

14  Dkt. 127-4 ¶ 11.a. Thus, the R&R's proposed vacatur would affect a small fraction of the

15  Southeast Alaska salmon harvests that are illegally authorized by NMFS's faulty ITS.

16        The economic impact would amount to about 2.6 percent of the Southeast Alaska seafood

17  industry and 0.5 percent of the Southeast Alaska total labor earning. *See* Dkt. 127-4 ¶ 31.

18          **3.**    **Defendants cannot overcome the strong presumption for vacatur.**

19        The R&R correctly found that NMFS's errors are "serious . . . as they clearly undermine

20  central congressional objectives" and Defendants failed to "demonstrate[] that the disruptive

21  consequences" of vacatur "outweighs the seriousness of the violations." Dkt. 144 at 27–28, 33.

22          **a.**    **NMFS's ESA and NEPA violations are exceedingly serious.**

23        NMFS's violations are plainly serious. NMFS violated the ESA by approving fisheries

24  that harm imperiled SRKWs and Chinook salmon in reliance on poorly defined and uncertain

25  mitigation. Dkt. 111 at 25–31. Moreover, one mitigation component—the prey increase

26  program—was implemented in violation of the ESA and NEPA and may be altered or terminated

27  when reviewed under those statutes. *See id.* at 31–33, 37–38. These deficiencies undermine

28  PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 13
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

SFER-15

NMFS's approval of the fisheries because, at best, it is uncertain whether harm to the species will be sufficiently offset by mitigation. Further, NMFS violated NEPA by issuing the ITS without first providing **any** of the required processes or reviews. *Id.* at 34–37. Courts have found far less NEPA errors to be serious. *E.g.*, *Wild Fish Conservancy*, 2014 U.S. Dist. LEXIS 105689, at *7–8 (failed to consider a reasonable alternative); *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1087 (D. Idaho 2020) (failed to provide for adequate public involvement).

NMFS and the Trollers argue that the ESA violations are not serious because the R&R found that NMFS is implementing some of the mitigation; i.e., the prey increase program. Dkt. 149 at 6–7; Dkt. 147 at 9–10. Even if that were true, it would not negate the seriousness of the violations. The Court faulted NMFS for identifying goals for the prey increase program without prescribing a detailed plan to offset harm from the fisheries. *See* Dkt. 111 at 28. That deficiency remains—NMFS contends that it is achieving its goal of funding increased hatchery production, but NMFS has yet to develop a specific plan and demonstrate that it sufficiently mitigates the harm. That will need to occur in a new ESA consultation. The R&R did not state otherwise; it indicated that NMFS has provided funding to the prey increase program and that hatchery fish have been produced, but the R&R does not find these efforts satisfy NMFS's duty to "insure" that the fisheries are not likely to jeopardize ESA-listed species. *See* 16 U.S.C. § 1536(a)(2). Moreover, NMFS's supposed implementation of the prey increase program has no bearing on the NEPA violations; NMFS's failure to provide any NEPA processes is a serious error that alone warrants vacatur of the ITS. *See* Dkt. 127 at 25–26. In sum, NMFS's representation that it is implementing the prey increase program—despite the Court's holding that NMFS implemented the program in violation of the ESA and NEPA—does not lessen the seriousness of the errors.

Further, NMFS is not implementing the prey increase program as contemplated when it approved the fisheries. The 2019 SEAK BiOp indicated that NMFS would fund the release of 20 million smolts annually. AR 47203, 47506. **That is not happening**; NMFS's records show that the program released 597,242 smolts in 2020, 6.3 million smolts in 2021, and 8 million smolts in 2022. Dkt. 133-3 at 24. This program is releasing **less than half** the smolts contemplated. In an

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 14
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-16**

apparent attempt to obfuscate its failure to meet its objective, NMFS provides figures that include smolt releases funded by Washington State under an entirely different program. *See id.* ¶ 3, p. 24. Washington's program does not compensate for NMFS's failure to implement the prey increase program; notably, NMFS has insisted that the prey increase program is needed to offset harvests for several years despite Washington's separate efforts. *See* Dkt. 43.5 ¶ 12; Dkt. 133-2 ¶ 23. Moreover, Washington's smolt releases occurred under annual budgets passed by the state legislature—there is no legal obligation or binding plan to continue them and there is no basis to assume they will continue. *See* Dkt. 133-3 at 11; Dkt. 43-5 ¶ 12. These measures therefore cannot be relied upon to offset harm to ESA-listed species that will result from the salmon fisheries. *See Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 743 (9th Cir. 2020).

Finally, the 2019 SEAK BiOp relied on all three components of the mitigation to offset harm from the fisheries, not just the prey increase program. *See* AR 47202–03; Dkt. 133-2 ¶ 11. NMFS has not shown that the mitigation to preserve Chinook salmon populations in four Puget Sound rivers is being implemented; as an example, that mitigation contemplated a new hatchery program in Mid-Hood Canal but this program does not appear to exist. *See* AR 47202. In sum, the R&R's suggestion that the prey increase program has received funding and released some fish does not negate the seriousness of NMFS's ESA and NEPA violations.

NMFS argues that the R&R erred by considering the status of ESA-listed species. *See* Dkt. 149 at 7. The authority to withhold the presumptive remedy of vacatur lies with the Court's equitable discretion; as such, courts consider a wide range of factors, including the ESA's requirement to tip the scale in favor of species. *E.g.*, *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242.

Alaska argues the violations are not serious because NMFS must reach the same decision on remand; i.e., that fisheries cannot be restricted beyond the Pacific Salmon Treaty. Dkt. 148 at 7–8. This is incorrect. The 2019 SEAK BiOp explains that "a Party may choose voluntarily to apply more constraints . . . than are specifically required by the [Treaty]. In fact, it was clearly understood throughout the negotiations that U.S. ISBM fisheries have and would continue to be managed to meet the requirements of the ESA . . . ." AR 47212; *see also* AR 47368, 47436.

PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 15
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

SFER-17

1    Indeed, Canada recently imposed additional restrictions to protect SRKWs. Dkt. 127-1 at 22–31.

2        **b.   Defendants have failed to show that disruptive consequences of
            vacating the prey increase program outweigh NMFS's errors.**

3

4        The R&R observed that some economic consequences will result from the recommended

5    vacatur, but found that such impacts do not outweigh the seriousness of NMFS's violations such

6    that the Court should depart from the presumptive remedy of vacatur. *See* Dkt. 144 at 28–31, 37.

7    The Court should reject Defendants' misguided objections to that finding. The Court should

8    instead adopt the proposed vacatur because this is not a rare case with only "relatively minor

9    errors" that are outweighed by significant damage from vacatur to the interests underlying the

10   ESA and NEPA. *See Puget Soundkeeper All.*, 2018 U.S. Dist. LEXIS 199358, at *16–17.

11       When considering the consequences of vacatur, the primary focus is environmental

12   impacts. *See* Dkt. 144 at 28; *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp.

13   3d 1030, 1038 (D. Mont. 2020). SRKWs and threatened Chinook salmon impacted by the

14   fisheries are in precarious and generally declining conditions. *See, e.g.*, AR 01741–42, 01747,

15   15905, 15911, 15988–89, 47276, 47502; Dkt. 127-2 ¶ 5. The current condition of SRKWs is

16   "unprecedented" and "an immediate increase in the abundance of Chinook [salmon] . . . [is

17   needed] to avoid functional extinction." Dkt. 127-1 ¶¶ 11,14, 18. The fisheries authorized by the

18   unlawful ITS harm these species. *See, e.g.*, AR 47319, 47439–40. Alaska's data show that most

19   Chinook salmon caught in the fishery are high priority prey for SRKW, which includes ESA-

20   listed Lower Columbia River and Puget Sound Chinook salmon. *See* Dkt. 135-1 at 5–6. The

21   proposed vacatur would alleviate some of that harm while NMFS evaluates the fisheries under

22   the ESA and NEPA to remedy its violations; Dr. Lacy's modeling shows that the relief may stop

23   the decline of the SRKW. Dkt. 127-2 ¶¶ 8–9. While Defendants disagree with aspects of the

24   modeling, the R&R correctly noted that it is beyond dispute that the SRKW is vulnerable and

25   that the vacatur would provide some benefit to the species. *See* Dkt. 144 at 27–28, 33–34.

26       It is undisputed that there will be some economic consequences from vacatur and that it is

27   proper for the Court to consider such matters. However, the economic impacts at issue cannot

28   overcome the presumption that agency decisions suffering from serious legal errors should be

KAMPMEIER & KNUTSEN PLLC            CORR CRONIN, LLP
1300 S.E. Stark Street, Suite 202   1001 Fourth Avenue, Suite 3900
    Portland, Oregon 97214               Seattle, Washington 98154
        (503) 841-6515                        (206) 625-8600

**SFER-18**

1  vacated. *See, e.g.*, *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d 1120, 1144–45

2  (9th Cir. 2020) (vacating despite significant economic impact on farmers across the country);

3  *Coal. to Protect Puget Sound*, 466 F. Supp. 3d at 1226; *In re Clean Water Act Rulemaking*, 568

4  F. Supp. 3d 1013, 1028 (N.D. Cal. 2021); *Se. Alaska Conservation Council v. U.S. Forest Serv.*,

5  468 F. Supp. 3d 1148, 1154–56 (D. Alaska 2020); *Zinke*, 441 F. Supp. 3d at 1087–89. This is

6  especially the case here because of the harm to ESA-listed SRKWs and salmon—Congress

7  intended for courts to prioritize the protection of such species over other interests through a

8  policy of "institutionalized caution." *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174, 194

9  (1978); *Klamath-Siskiyou*, 109 F. Supp. 3d at 1245–47. Further, the economic impact of vacatur

10  is substantially mitigated by the proposal for partial vacatur of the ITS. *See supra* sec. IV.A.2.

11       NMFS's contention that the economic impacts warrant the rare remedy of remand

12  without vacatur is misplaced. *See* Dkt. 149 at 8. Such relief has been deemed appropriate where

13  vacatur would cause both "economically *and* environmentally harmful consequences." *See N.*

14  *Plains Res. Council*, 460 F. Supp. 3d at 1038–41 (discussing *Cal. Cmtys.*, 688 F.3d 989 & *Idaho*

15  *Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995)). The proposed vacatur of the ITS

16  provides environmental benefits without any environmental harm. *See* Dkt. 144 at 29.

17       The Court should adopt the recommended vacatur because NMFS's serious violations are

18  not outweighed by the consequences of the proposed partial vacatur of the ITS.

19       **B.    The Court Should Adopt the R&R's Decision to Strike Materials.**

20       The Trollers' evidentiary objections raise non-dispositive issues reviewed under a

21  "clearly erroneous or contrary to law" standard. *See* Fed. R. Civ. P. 72(a); *Bhan v. NME Hosps.,*

22  *Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991); *Allen v. Sybase, Inc.*, 468 F.3d 642, 657 (10th Cir.

23  2006); *Cutting v. Yoke Indus. Corp.*, No. C20-5346 BHS-JRC, 2022 U.S. Dist. LEXIS 201441,

24  at *10–11 (W.D. Wash. Nov. 4, 2022). This standard is "significantly deferential, requiring a

25  'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prod. of*

26  *Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993).

27       It was the Trollers' burden to establish that its experts' testimony meets the admissibility

28  PLAINTIFF'S RESPONSE TO OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT – 17
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-19**

1   requirements. *Little Butte Prop. Owners Water Ass'n v. Bradley*, No. 2:17-CV-162-RMP, 2018

2   U.S. Dist. LEXIS 70501, at *21 (E.D. Wash. Apr. 26, 2018); Fed. R. Evid. 702 advisory

3   committee's note to 2000 amendment. Courts are not required to hold evidentiary hearings to

4   provide a party a second chance to qualify experts. *See Hopkins v. Dow Corning Corp.*, 33 F.3d

5   1116, 1124 (9th Cir. 1994); *United States v. Phillipos*, 849 F.3d 464, 471 (1st Cir. 2017)

6   (collecting cases); *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1114 (11th Cir. 2005).

7       The Trollers argue the R&R erred in concluding that Mr. Olson lacks the foundation to

8   provide expert testimony. Dkt. 147 at 8. Mr. Olson is a troller and attorney, not an economist.

9   Dkt. 131 ¶¶ 2–5, 10–11. And while he claims to have "extensive familiarity with natural

10  resources economics," he has not demonstrated any relevant qualifications or training, and he has

11  misused basic economic terms. Dkt. 138 at 14–15; Dkt. 144 at 22–23. Mr. Olson may be

12  interested in economics and even work on such issues in his low bono practice, but a lawyer

13  representing clients on legal issues that intersect with economics does not make that lawyer a

14  qualified economic expert. *See* Dkt. 131 ¶¶ 10–11. The decision to strike this untrained, non-

15  economist's economic opinions is plainly not a clear error. *Maldonado v. Apple, Inc.*, No. 3:16-

16  cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483, at *82–85 (N.D. Cal. May 14, 2021).

17      The Trollers next argue the R&R erred in excluding Mr. Fujioka's testimony on impacts

18  of shutting fisheries and critiques of Dr. Lacy's modeling. Dkt. 147 at 8–9. Mr. Fujioka has not

19  identified any qualifications specific to these issues. *See* Dkt. 138 at 15; Dkt. 144 at 23. Instead,

20  he has a bachelor's degree in engineering and experiences as a troller and member of fish and

21  seafood organizations—none of which provide experience on fishery impacts or population

22  viability analysis. *See* Dkt. 129 ¶¶ 2–6. The decision to strike his testimony is also not clear

23  error. *Little Butte Prop. Owners*, 2018 U.S. Dist. LEXIS 70501, at *20–24.

24  **V.    CONCLUSION.**

25      For the foregoing reasons, the Conservancy respectfully requests that the Court adopt the

26  R&R's proposed partial vacatur of the ITS and decision to strike inadmissible materials.

27

28  PLAINTIFF'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S REPORT – 18
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**SFER-20**

1

Respectfully submitted this 24th day of January 2023.

2

3

KAMPMEIER & KNUTSEN, PLLC                    CORR CRONIN, LLP

4

By:  s/ Brian A. Knutsen                     Eric A. Lindberg, WSBA No. 43596
Brian A. Knutsen, WSBA No. 38806             1001 Fourth Avenue, Suite 3900

5

By:  s/ Emma A. O. Bruden                    Seattle, Washington 98154
Emma A. O. Bruden, WSBA No. 56280            Tel: (206) 625-8600

6

1300 S.E. Stark Street, Suite 202            Email: elindberg@corrcronin.com
Portland, Oregon 97214

7

Tel: (503) 841-6515 (Knutsen)

8

        (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com

9

        emma@kampmeierknutsen.com

10

Paul A. Kampmeier, WSBA No. 31560

11

811 First Avenue, Suite 468
Seattle Washington 98104

12

Tel: (206) 858-6983
Email: paul@kampmeierknutsen.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO OBJECTIONS        KAMPMEIER & KNUTSEN PLLC    CORR CRONIN, LLP
TO MAGISTRATE JUDGE'S REPORT – 19         1300 S.E. Stark Street, Suite 202  1001 Fourth Avenue, Suite 3900
Case No. 2:20-cv-00417-RAJ-MLP                Portland, Oregon 97214      Seattle, Washington 98154
                                                 (503) 841-6515              (206) 625-8600

**SFER-21**