**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILD FISH CONSERVANCY, a Washington non-profit corporation, | No. 23-35322 |
| Plaintiff-Appellee, | D.C. No. 2:20-cv-00417-RAJ |
| v. | MEMORANDUM* |
| JENNIFER QUAN, in her official capacity as Regional Administrator of the National Marine Fisheries Service; et al., | |
| Defendants, | |
| ALASKA TROLLERS ASSOCIATION, | |
| Intervenor-Defendant, | |
| and | |
| STATE OF ALASKA, | |
| Intervenor-Defendant-Appellant. | |
| WILD FISH CONSERVANCY, a Washington non-profit corporation, | No. 23-35323 |
| | D.C. No. 2:20-cv-00417-RAJ |
| Plaintiff-Appellee, | |

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

JENNIFER QUAN, in her official capacity as Regional Administrator of the National Marine Fisheries Service; et al.,

    Defendants,

STATE OF ALASKA,

    Intervenor-Defendant,

and

ALASKA TROLLERS ASSOCIATION,

    Intervenor-Defendant-Appellant.

───────

WILD FISH CONSERVANCY, a Washington non-profit corporation,

    Plaintiff-Appellant,

v.

JENNIFER QUAN, in her official capacity as Regional Administrator of the National Marine Fisheries Service; et al.,

    Defendants-Appellees,

and

ALASKA TROLLERS ASSOCIATION; STATE OF ALASKA,

    Intervenor-Defendants-

No. 23-35324

D.C. No. 2:20-cv-00417-RAJ

|  |  |
|---|---|
| Appellees. | |

|  |  |
|---|---|
| WILD FISH CONSERVANCY, a Washington non-profit corporation,<br><br>        Plaintiff-Appellee,<br><br> v.<br><br>JENNIFER QUAN, in her official capacity as Regional Administrator of the National Marine Fisheries Service; et al.,<br><br>        Defendants-Appellants,<br><br> and<br><br>ALASKA TROLLERS ASSOCIATION; STATE OF ALASKA,<br><br>        Intervenor-Defendants. | No.   23-35354<br><br>D.C. No. 2:20-cv-00417-RAJ |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted July 18, 2024
San Francisco, California

Before: M. SMITH, BENNETT, and JOHNSTONE, Circuit Judges.

The National Marine Fisheries Service ("Service") issued a biological opinion in 2019 ("2019 Opinion") addressing how certain federal actions would affect endangered Southern Resident killer whales ("Whales") and several threatened populations of Chinook salmon. The Service concluded that the

3

proposed actions complied with the Endangered Species Act ("ESA"). The Wild Fish Conservancy ("Conservancy") challenged the 2019 Opinion in federal district court, claiming that the Service had violated the ESA, Administrative Procedure Act ("APA"), and National Environmental Policy Act ("NEPA").

In August 2022, the district court held that the Service erred in: 1) issuing an incidental take statement that authorized the southeastern Alaska troll fishery to harvest Chinook salmon despite a potential reduction in prey for the Whales, and 2) approving a program that funded Chinook salmon hatcheries to increase prey for the Whales. The Service accepted the merits decision of the district court and began preparing a new biological opinion.

In May 2023, the district court issued its decision on the proper remedies pending remand, vacating the take statement but not the prey increase program. The parties cross-appealed those decisions. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's equitable decision regarding whether to remand without vacatur for abuse of discretion. *See Pit River Tribe v. U.S. Forest Service*, 615 F.3d 1069, 1080 (9th Cir. 2010). We reverse the district court's vacatur of the take statement and affirm its decision not to vacate the prey increase program.[1] Because the parties are familiar with the facts, we do not recount them

---

[1] The Service and two intervenors, the State of Alaska and the Alaska Trollers Association, moved this Court to stay the district court's order vacating the take

here, except as necessary to provide context to our ruling.

 1. The district court abused its discretion by vacating the take statement's authorization of the troll fishery's summer and winter Chinook salmon harvests. Although vacatur of unlawful agency actions is the "presumptive remedy under the APA," *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. U.S. Forest Service*, 907 F.3d 1105, 1121-22 (9th Cir. 2018)), courts remand without vacatur "when equity demands," *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995). This equitable determination requires courts to apply the *Allied-Signal* test, weighing: 1) the seriousness of the agency's errors, against 2) the disruptive consequences of vacatur. *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

 The district court held that the Service committed serious ESA and NEPA violations when it issued the take statement in 2019. In particular, the court found that the Service violated the ESA by relying on "uncertain and indefinite mitigation" from the prey increase program in evaluating and issuing the take statement. But the court disregarded the likelihood that the take statement would be

---

statement. A motions panel granted the stay in June 2023, restoring the take statement pending the outcome of this appeal.

supported by better reasoning, and readopted, on remand. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). As the court recognized elsewhere, the prey increase program—previously "uncertain and indefinite"—had been running for more than three years and had generated "a certain and definite increase in prey" by the time the court issued its remedies decision. Thus, the district court erred by ignoring that the agency's errors, although serious, were unlikely to affect the substance of the decision adopted on remand. *See id.; Ctr. for Food Safety v. Regan,* 56 F.4th 648, 664 (9th Cir. 2022) (evaluating whether "an agency is likely to be able to offer better reasoning and adopt the same rule on remand").

Turning to the second *Allied-Signal* factor, the district court erred by overlooking the severe disruptive consequences of vacatur. Even the Conservancy's experts conceded that vacating the take statement would lead to millions of dollars of losses for Alaskan fishermen and their communities. The district court, however, glossed over these significant economic consequences, as well as the downstream social and cultural harms to fishing villages and Alaska Natives. *Cf. Cal. Cmtys.*, 688 F.3d at 993-94 (remanding without vacatur to avoid "economically disastrous" results and protect a "venture employing 350 workers"). In contrast, the Conservancy's expert recognized that there was "considerable uncertainty" about how the troll fishery affected prey availability and projected

6

that precluding the fishery from harvesting Chinook salmon would lead to only minor benefits for the Whales in any given year. But the district court nevertheless found that vacatur would lead to an "uncertain" but "meaningful" benefit for the Whales, and it emphasized that vacatur was required because of the "presumption of vacatur" and its "mandate" to protect the Whales and "tip the scale" in their favor. That analysis improperly predetermined the outcome of the *Allied-Signal* test by double-counting the Service's ESA violation as both a serious error and a substantive consideration that superseded the disruptive consequences of vacatur.

2. The district court did not abuse its discretion by remanding without vacating the prey increase program. The court held that the Service committed serious ESA and NEPA violations but was "poised" to remedy its ESA missteps and incorporate the results of site-specific NEPA reviews in a new biological opinion. Although this does not ameliorate the Service's initial errors in preparing the 2019 Opinion, it again suggests that "the agency [will] likely be able to offer better reasoning" and "adopt the same [program] on remand." *Pollinator Stewardship*, 806 F.3d at 532.

As to the disruptive consequences of vacatur, the district court found that vacating the prey increase program would lead to negative environmental consequences because the program provided an important, targeted source of prey for the Whales. The court also found that vacatur would threaten the resumption of

7

the program even after the Service issued a new biological opinion, and that vacatur would disrupt unrelated fisheries and federal actions. In view of those significant disruptions and "possible environmental harm[s]," *id.*, the district court did not abuse its discretion by concluding that the disruptive consequences of vacating the prey increase program outweighed the seriousness of the Service's errors.

    3. The Service has repeatedly committed to fixing its errors and completing a new biological opinion before December 1, 2024. At oral argument, the Service assured this Court that it could not "imagine what would happen that would derail" the biological opinion and that it was "committed to completing the documents" before December 1, 2024. In light of the agency's representation that any delay is beyond the realm of imagination, this Court expects the Service to adhere to its deadline. The equitable considerations that sometimes justify remand without vacatur would be significantly altered if courts could not rely on agencies to act promptly on remand.

*

The district court's remedies order is **REVERSED IN PART**, as to the take statement (appealed at Nos. 23-35322, 23-35323, and 23-35354); **AFFIRMED IN PART**, as to the prey increase program (appealed at No. 23-35324); and the case is **REMANDED WITHOUT VACATUR** to the Service.[2]

---

[2] The motions for leave to file briefs as *amicus curiae* at No. 23-35322, Docket Nos. 72 (Southeast Alaska Native Coalition); 74 (SalmonState); 75 (Washington State Department of Fish and Wildlife); 77 (Alaska Congressional Delegation); 94 (Law of the Wild, Orca Conservancy, and Wild Orca); 97 (Law Professors); 98 (The Conservation Angler, Native Fish Society, Umpqua Watersheds, and Snake River Waterkeeper); and 99 (Raincoast Conservation Foundation, SkeenaWild Conservation Trust, Watershed Watch Salmon Society, David Suzuki Foundation, Georgia Strait Alliance, Pender Ocean Defenders, and Saturna Island Marine Research and Education Society) are **GRANTED.**

The Conservancy's motion for judicial notice at No. 23-35322, Docket No. 90 is **DENIED.**